TOMMY PAUL WOYCHESIN v. STATE.

No. 25,444. April 9, 1952.
Rehearing Denied May 21, 1952.
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) June 18, 1952.

Hon. John Snell, Jr., Judge Presiding.

*Clem Fain,* Livingston, for appellant.

*Sam W. Davis,* Criminal District Attorney, *King C. Haynie,* Assistant Criminal District Attorney, Houston, and *George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is negligent homicide in the first degree; the punishment, one year in jail.

The information is in two counts. The first charges the homicide by negligence while engaged in the commission of the unlawful act of driving an automobile at a rate of speed in excess of 60 miles per hour. The second count charges the homicide to have been committed while appellant was engaged in the lawful act of driving an automobile on a public highway.

The negligent acts alleged to have caused the automobile to strike the deceased and thus caused her death, as set forth in both counts of the information, were:

1. Failing to guide said vehicle away from the deceased.

2. Failing to keep said vehicle under proper control by reason of its operation at a fast rate of speed.

3. Failing to keep a proper lookout for the deceased.

There was conflict between the testimony of the witnesses for the state and the accused as to the speed he was traveling. Appellant testified that he was traveling no more than 45 miles per hour.

It may be observed that excessive speed is not alleged in either count of the information as the negligent act which caused the death of the deceased. In the first count, speeding was alleged as an unlawful act in which appellant was engaged at the time he failed to guide his car away from the deceased, failed to keep his car under proper control by reason of its operation at a fast rate of speed, and failed to keep a proper lookout.

In the second count, the same failures were alleged as acts of negligence on the part of appellant which caused the death of the deceased, committed while appellant was lawfully driving the automobile.

In order to convict appellant under either count of the information, it was incumbent upon the state to prove that the deceased was killed as a result and consequence of the negligence of appellant in one or more of the manners alleged. And, in addition thereto, in order to convict for negligent homicide in the second degree, as charged in the first count of the information, the jury would have been required to find beyond a reasonable doubt that appellant at the time of the accident was driving his car at a rate of speed in excess of 60 miles per hour. This first count passed out of the case with the jury's verdict.

We are called upon to determine whether or not the evidence supports a finding by the jury beyond a reasonable doubt that appellant, while engaged in the lawful act of driving an automobile, was guilty of negligence in one or more of the ways charged.

The state called officer Scarbrough, who testified that he had made measurements of the street at the point of the accident, which was marked off in four ten-foot lanes with eight foot shoulders on each side. The witnesses Garrett, Robinson and Newcomb, testified that the point of impact was on the center stripe between the two lanes of traffic going west. From this, we conclude that the deceased was 18 feet from the curb at the time she was hit. These witnesses further testified that they did not see deceased in the street until just a second before the accident.

Appellant testified that he was driving in the center lane of traffic, that as he approached the scene of the accident he "glanced across the road and it looked like Santa Claus standing around his pickup there," that then he noticed deceased, but did not discover her and her children in time to apply his brakes or to avoid hitting them.

The view we take of the evidence is that, even though the state's witnesses did not see deceased in the street until immediately before the accident, this is not significant because they were under no duty to do so, while appellant was under such a duty. The fact that the deceased had progressed 18 feet into the street from the curb at the time she was hit, coupled with the fact that appellant did not apply his brakes at any time, according to his testimony, is indicative to us that he was looking at Santa Claus or somewhere other than straight

in front of him and was, therefore, guilty of failing to keep a proper lookout.

We are further of the opinion that the evidence is sufficient to support a finding of negligence on the second ground charged, by virtue of appellant's own admission that he was driving 40 to 45 miles per hour at a point where two streets meet in a congested area, and the obvious deduction from the fact that the tragedy occurred. Speed, under many conditions, may require extra care on the part of a driver in keeping his car under control, and failure in that regard may constitute negligence, though such speed is not in excess of the maximum set by law. Appellant testified that he was meeting three automobiles, one of which had bright lights, and yet he did nothing to reduce his speed. The entire testimony from appellant indicates that, through haste to beat deadline at the barber shop and then to secure some parts right at closing time in the evening, he failed to control his fast moving car so as to prevent striking pedestrians crossing the highway, and that such negligence resulted in the death of three persons.

Finding no reversible error, the judgment of the trial court is affirmed.

BEAUCHAMP, Judge (dissenting).

I am unable to agree with my associates and find it necessary to restate the case in order to make clear my dissent.

It is alleged that on the 22nd day of December, 1950, the appellant was in Harris County "engaged in the performance of an unlawful act, to-wit, driving and operating a motor vehicle, to-wit, an automobile, on a public highway there situate, * * * at a rate of speed in excess of sixty miles per hour," and while so driving negligently and carelessly caused the death of Madeline O. Howard, by colliding with and striking her, crushing and mangling and bruising her body, from which she died.

It is further alleged that he was negligent in that he failed to guide the vehicle away from the deceased, who could have been seen in time to avoid running into and over her, had he been looking in the direction he was traveling.

Count No. 2 in the indictment alleged, in similar language, that the accident occurred while he was engaged in the per-

formance of a lawful act. The language as to negligence was the same.

The first count of the indictment is brought under Article 1239, Vernon's Ann. P.C. which applies when the act is committed while the offender is engaged in or attempting to engage in the commission of an unlawful act. The punishment may be by fine "not exceeding $3,000.00, or by imprisonment in jail not exceeding three years." See Art. 1242, Vernon's Ann. P.C.

The offense alleged in the second count of indictment is defined by Article 1231 of Vernon's Ann. P.C. and the punishment may be by a fine not exceeding $1,000.00, or by imprisonment not exceeding one year.

Appellant testified in his own behalf that he operated a garage at his home, 10402 Palestine in Jacinto City, a suburb of Houston; that he had worked at his garage all day, left late in the afternoon to go to a barber shop, and after visiting the shop he was on his way to Greens Bayou. As he reached the vicinity of Price's Service Station, where the tragedy occurred, he said that very suddenly the deceased and her children appeared before him, "like a bunch of deer." A car meeting him had bright lights on and the impact was so sudden that he had no time to use his brakes and did not do so until the car had coasted down some distance. He said there was no traffic light there and no mark indicating a crossing for pedestrians. He went to a telephone and reported the matter to the sheriff and remained at the scene until he was taken into custody. His testimony, if believed by the jury, would relieve him of liability under the charge of negligent homicide of the first degree.

The state introduced a number of witnesses who testified that they were present within view of the accident and saw the car strike the deceased and her two children. A Mr. Price testified as an eye witness to the occurrence. His attention was attracted by the noise. He looked up immediately and saw appellant's car moving on east. He said: "I saw some bodies go up in the air in front of the car. * * *." He ran to the parties and then gave the alarm to the sheriff's department. He identified the deceased and her children, whom he knew, and described the positions in which the bodies were left and the injuries inflicted.

C. W. Garrett was a customer at Price's Service Station.

He was standing on the outside waiting for his car to be serviced. His testimony on the subject of negligence was that he was attracted to the automobile coming down Market Street going toward Greens Bayou. He estimated the speed of the car at sixty or sixty-five miles per hour. He watched it as it passed him. He heard a terrible noise, looked up and observed the accident as it happened at the point of impact. He said the automobile was in the clear as it approached and had the head lights on. He heard the noise, looked up and saw the people in the air, three of them. The car passed on by, pulled to the right and stopped. He then described the positions of the bodies and, to some extent, the injuries.

On cross-examination he said the automobile driven by appellant appeared to be in the center lane, next to the center of the highway on the right hand side in the direction in which it was going.

J. D. Robinson, who lived on the Maxey Road, testified in behalf of the state that he was at the intersection of Market Street Road and Maxey Road, in an automobile, that he saw no other automobile on Maxey Road at the time. He had come to the Market Street Road, stopped his car and from that point he saw appellant's car before the accident and observed that it was coming at a good speed, which he estimated to be seventy miles per hour. He was looking at the car when the accident occurred and saw the people go straight up into the air. He said: "I did not see them at all until after they were hit." He said it was just getting dark and appellant had his lights on. He saw no other car going in the same direction and only two other cars in the vicinity.

Paul V. Newcomb, another witness produced by the state, said he witnessed the accident. He was stopped at Maxey Road waiting to cross the street. He was in a pickup truck. His attention was attracted to appellant's car because of the high rate of speed it was going. He had a clear view of the car as it came towards him and there was nothing to obstruct his view. He says further, "Yes, as my attention was attracted to this automobile I continued to watch it. Yes, I did see the accident. No, I did not see any pedestrians there before the accident. For a split second before I heard the noise I saw the headlights play on a lady. Yes, that was the person struck, the mother." He testified, further, "At the time I saw her she was not moving she seemed to be frozen, standing still, to the best of my

judgment. It was just a split second I couldn't say how far it was from her, practically upon her. Yes, I said I saw her from the headlights of this automobile. When this automobile struck the woman I didn't see the children I saw the woman only. I saw her hit and go up in the air and saw three bodies go up, and scatter."

Testifying in his own behalf, appellant said that he had traveled from his home one-half mile to the place of the accident; that he had been on the road, including stops, fifteen minutes and that he was not traveling faster than forty to forty-five miles per hour at the time of the collision.

It will thus be seen that the state made its case under the first count and sought to convict him of homicide in the second degree. The jury found him not guilty of this count and thus eliminated the only controverted issue which could support the finding of negligence. The appellant's testimony as to how the accident occurred is corroborated by several eye witnesses introduced by the state and does not show negligence on his part, unless negligence could spring from driving at an unlawful speed. The jury having found against the state on this issue, there is nothing to support the conviction for homicide of the first degree.

My conclusion is that the evidence records an unavoidable accident that could come to anyone. It is a very serious accident but the seriousness of it, resulting in three deaths, adds nothing to the facts of guilt or innocence of the party charged.

I respectfully dissent.

### ON APPELLANT'S MOTION FOR REHEARING.

GRAVES, Presiding Judge.

Appellant has filed a motion for rehearing in this case, stressing the fact that in order to uphold the conviction herein it is necessary that we find several deductions from the testimony offered, in order to predicate thereon that appellant failed to keep the proper lookout at the time he struck Mrs. Howard and her two children.

It is shown by some of the witnesses that appellant was coming down the highway upon which the accident occurred, as fast—some say—as seventy miles per hour; it is further shown

that some of the witnesses saw Mrs. Howard and her two children when they were quite a distance away from the point of impact. It is further shown that the lady was approximately eighteen feet out in the center of the highway when she was struck, and that the little boy's shoes were found at that point. Also it was shown that appellant's car traveled approximately three hundred feet after the impact before it stopped. It is further shown that the accident occurred between dusk and darkness; some people near the roadway could not see Mrs. Howard and the children, but other people close to said highway saw them prior to the time they were struck. One witness testified that he saw appellant's car approaching, at seventy miles per hour, and also saw the lady reflected in the lights of appellant's car. As shown by appellant's own testimony, he did not attempt to stop in any way.

We think that, under the law, it was the duty of appellant, in going at this high rate of speed, to keep a proper lookout and, having eyes to see, he should have seen this lady and her two children prior to the accident. It was not too dark for anyone to see, for practically all the witnesses saw them beforehand or saw them in the air after appellant struck them with no cessation of speed out on a public highway where different roads intersect.

We see no reason why we should fail to hold that appellant did not keep a proper lookout.

The motion for rehearing is accordingly overruled.